UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA MASTROLILLO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CASE NO. 3:04-CV-464 (RNC) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| NORWALK COMMUNITY COLLEGE, | : | |
| | : | |
| Defendant. | : | |

RULING AND ORDER

Plaintiff, a former assistant professor at Norwalk Community
College ("NCC"), claims that her teaching contract was not
renewed because of "mental disability discrimination" and "sex
discrimination." Defendant denies these allegations and states
that the contract was not renewed due to poor performance.
Defendant has filed a motion for summary judgment. Summary
judgment may be granted when there is no "genuine issue as to any
material fact" and the movant is "entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c). Plaintiff has not
responded to the motion for summary judgment, despite being
notified in writing of her obligation to do so. For the reasons
summarized below, the motion for summary judgment is granted.

Background

The record discloses the following facts regarding
plaintiff's employment discrimination claims. In January 2000,
NCC President William Schwab ("Schwab") hired plaintiff to teach
computer courses in the Computer/Information Systems Department.

Plaintiff was the only female full-time nontenured member of the Department.  As a nontenured member of the faculty, her contract was subject to annual renewal.  NCC renewed her contract for the 2000-2001 and 2001-2002 school years but not for the 2002-2003 school year.

In January 2001, plaintiff had major surgery and her mother died.  That month, she informed the chair of the Computer/Information Systems Department that she was under psychiatric care.  No documentation concerning a diagnosis or treatment was provided.

Plaintiff asked that her teaching schedule be changed so that she would not have to teach both day and evening classes.  She also asked that she be permitted to teach non-advanced courses only.  Both requests were denied.

In the fall of 2001, NCC received several complaints from students regarding plaintiff's teaching, including complaints that she was "not teaching them anything," that she had stopped teaching, and that she was relying on a student to facilitate discussion.  (Engelman Aff. at ¶ 9; Cassidy Aff. at ¶ 7.)

Plaintiff's teaching was observed by the chair of the department and the coordinator for the information technology program.  She received negative evaluations indicating that she seemed unprepared for class and that the main premise of one of her lectures was flawed.

The courses that plaintiff regarded as her strengths were being phased-out by NCC. Plaintiff declined to attend training that would have prepared her to teach more advanced classes.

In February 2002, Schwab decided that plaintiff's teaching contract should not be renewed. Plaintiff was the only faculty member whose contract was not renewed for the 2002-2003 year, and she had worked for the department longer than some of the male full-time faculty. Male professors were subsequently assigned to teach the courses that she had taught.

Plaintiff filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities. The Commission found no reasonable cause to believe that any discrimination had occurred.

In the five years preceding plaintiff's nonrenewal, four other nontenured faculty at NCC were not reappointed due to poor performance, including a professor in plaintiff's department. (DellaMura Aff. at ¶ 23.) All four were males. Two of plaintiff's three supervisors were females.

Discussion

Disability Discrimination

The Americans with Disabilities Act of 1990 ("ADA") prohibits an employer from depriving a qualified individual of an employment opportunity because the individual has a disability. See 42 U.S.C. § 12112(a). Under the ADA, a person with a

disability is defined as one who has a physical or mental impairment that substantially limits one or more major life activities.  See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). Many claims brought under the ADA are dismissed on summary judgment because the plaintiff is unable to prove that he or she has a disability within the meaning of the statute.

Plaintiff's claim appears to be that she had a mental impairment that substantially limited her ability to work. Inability to perform a particular job does not constitute a substantial limitation on the activity of working.  See 29 C.F.R. § 1630.2(j)(3)(I).  Rather, "when the major life activity under consideration is that of working," a plaintiff must demonstrate that he or she is "unable to work in a broad class of jobs," not just the "particular job" at issue.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).

Plaintiff has not shown that a mental or physical impairment precluded her from performing a broad range of jobs.  At most, she has shown that after she had surgery and her mother died, she underwent psychiatric care and had difficulty continuing to teach full-time both during the day and at night.  This falls far short of proving that she had a disability within the meaning of the ADA.[1]  Accordingly, her disability discrimination claim must be

---

[1]  In addition to protecting persons who actually have a substantially limiting impairment, the ADA also protects persons who have a record of having a substantially limiting impairment

4

dismissed.

Sex Discrimination

Title VII of the Civil Rights Act of 1964 prohibits
employers from discriminating against employees based on sex.
Plaintiff alleges that her teaching contract was not renewed for
the 2002-2003 school year because of sex discrimination.  To
prevail on this claim, plaintiff must prove that defendant's
stated reason for not renewing her contract is false and that her
gender was a factor that played a part in the defendant's
decision.  Defendant contends that the record would not permit a
jury to make these findings.  I agree.

NCC's claim that plaintiff's contract was not renewed due to
poor performance is amply supported by student complaints,
supervisor evaluations, and plaintiff's own acknowledgment that
she lacked expertise in networking courses.  Moreover,
plaintiff's evidence fails to support a reasonable inference that
her gender played a role in the nonrenewal.  The decision to not
renew her contract was made by a male, but he was the same person
who hired her.  See Grady v. Affiliated Cent., Inc., 130 F.3d
553, 560 (2d Cir. 1997) (when the decision to hire and fire an
employee is made by the same person, it is difficult to impute an
invidious motive).  Two of plaintiff's three supervisors were

---

or are regarded as having such an impairment.  Plaintiff does not
allege, expressly or by implication, that she qualifies for
protection under the ADA on either of these additional grounds.

5

female, and the department had previously declined to renew the contract of a similarly-situated male due to poor performance. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (1994) (outlining factors that may give rise to an inference of discriminatory intent). On this record, a reasonable jury could not find that the nonrenewal was motivated by sex discrimination. Accordingly, this claim must also be dismissed.

Conclusion

For the foregoing reasons, defendant's motion for summary judgment [doc. #44] is hereby granted. Judgment shall enter for defendant dismissing the complaint with prejudice.

So ordered this 11th day of April 2008.


_____/s/RNC_____
Robert N. Chatigny
United States District Judge